**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DAVID FELDMAN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL NO. 09-168-GPM |
| | ) |
| **OLIN CORPORATION,** | ) |
| **OLIN BRASS, and** | ) |
| **GLOBAL BRASS AND COPPER, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

      This matter came before the Court on September 27, 2010, for hearing on the following motions: Defendants' motion for summary judgment on Counts I and III; Defendants' motion for summary judgment on Count IV; Defendants' motion for summary judgment on Count II; and, Defendant Global Brass and Copper, Inc.'s motion for summary judgment. All Defendants' motions were filed under Federal Rule of Civil Procedure 56(b).[1]  For the following reasons, and for those set forth on the record, all of Defendants' motions for summary judgment are GRANTED. Though Defendants moved for summary judgement on Plaintiff's counts separately, this Order renders summary judgment on Plaintiff's action as a whole.

---

[1] Defendants' motion for sanctions pursuant to Rule 11 (Doc. 92) and alternate motion for attorney fees (Doc. 96) will be addressed in a separate Order.  This Order moots Mr. Feldman's motion for leave to file a supplement to the record (Doc. 95), and that motion will be denied.

## BACKGROUND

Plaintiff, Mr. Feldman, began working for Defendants in 1974.  In 2002, he was diagnosed with fibromyalgia, and continued to work a swing shift–rotating day, afternoon, and midnight shifts. In January of 2005, Mr. Feldman bid on and received a straight day tractor operator position.  The next month  Mr. Feldman submitted a no-overtime restriction in an effort to ease symptoms of his fibromyalgia.  Defendants granted this restriction.  In October of 2005, Mr. Feldman sustained a back injury and filed a worker's compensation claim in November of 2005.  He consequently underwent disc replacement spinal surgery on April 21, 2006.  The worker's compensation claim was eventually settled.  Mr. Feldman returned from medical leave related to that injury and surgery on September 8, 2006 with a medical no-overtime restriction.  Defendants did not allow Mr. Feldman to return to work with that restriction.  Mr. Feldman grieved this decision pursuant to the grievance system of the collective bargaining agreement in force.  Mr. Feldman's grievance was successful, and he returned to work on September 21, 2006 as a straight day shift tractor operator.

On May 7, 2007, Defendant Olin Corp. initiated a job "curtailment," a result of which was Mr. Feldman's reassignment to a rotating shift.  Mr. Feldman worked in this position until May 21, 2007 when he brought in a note from his physician stating that Mr. Feldman could work only straight day–not rotating–shifts.  Defendants informed Mr. Feldman there was no work available meeting Mr. Feldman's medical restriction needs, so Mr. Feldman was laid off.  While laid off, Mr. Feldman continued to bid on positions at Olin Corp.  During this time, Mr. Feldman also filed a charge of discrimination against Defendants with the Illinois Department of Human Rights alleging retaliation, failure to accommodate, and disability and age discrimination.  In December of 2007, Mr. Feldman bid and was selected for a straight day tractor driver position.  He has worked

continuously for Defendants since that time.

On March 4, 2009, Mr. Feldman filed this action after receipt of his right to sue letter from the EEOC in December of 2008. In his complaint, Mr. Feldman claimed that Defendants discriminated against him based on his age and disability, and retaliated against him after he filed his worker's compensation claim. Mr. Feldman alleged in Count I, disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*; in Court II, age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*; in Count III, retaliation in response to his ADA and ADEA-protected complaints; and in Count IV, retaliatory discharge for exercise of his rights under the Illinois Worker's Compensation Act, 820 ILCS 305/1 *et seq.*

## ANALYSIS

The standard applied to summary judgment motions filed under Rule 56 is well-settled and has been succinctly stated as follows.

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. The evidence must create more than some metaphysical doubt as to the material facts. A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (internal citations and quotations omitted). "We often call summary judgment, the 'put up or shut up' moment in litigation, by which we mean that the nonmoving party is required to marshal and present the court with the evidence

she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely." *Goodman v. National Security Agency, Inc.,* No. 09-2043, 2010 WL 3447727 (7th Cir. Sept. 3, 2010). The Court is mindful of this standard in its recitation of the facts above. Additional facts will be discussed in relation to the legal standards applicable to discrimination and retaliation claims.

<u>Improperly Named Defendant</u>

In its answer to Plaintiffs' complaint, Defendant Global Brass and Copper denied that it at any time employed Mr. Feldman and asserted that it was not a proper party in this action (Doc.s 13, 48). Further, Defendant states that in its answers to discovery requests it repeatedly, under oath, protested that Mr. Feldman was never a Global Brass and Copper employee, and thus Global Brass and Copper could not be a proper party (Doc. 90). Still a party in this litigation fourteen months after its answer claiming to be an improper party, Global Brass and Copper filed for summary judgment and costs associated with that motion (Doc. 67). With this motion, Defendant submitted an affidavit of Global Brass and Copper's Director of Compensation and Benefits Mark Tanis further stating that Mr. Feldman was never employed by Global Brass and Copper and that Defendant was not a proper party. In his response to Defendants' motion for summary judgment, Mr. Feldman does not object to Global Brass and Copper's request for dismissal, but does challenge Defendant's request for costs, claiming that the Mark Tanis affidavit was the first statement from Defendant averring that Mr. Feldman was never a Global Brass and Copper employee (Doc. 86).

It is clear from the record that Defendant made multiple statements of its status as an improper party to Mr. Feldman's counsel. Moreover, Global Brass and Copper, repeatedly, claimed that it had fewer employees than necessary to bring it under the province of either the ADA or the

Page 4 of 15

ADEA. The response to the motion for summary judgment fails to mention any of these Global Brass and Copper statements. At the September 27, 2010 hearing on the motions to dismiss, Plaintiff's argument that he proceeded in good faith referenced a print-out from Global Brass and Copper's website wherein was stated that Global Brass and Copper employs over 2,000 employees. While this might have raised a valid question on Global Brass and Copper's liability under the ADA and ADEA, Mr. Feldman's reliance on this proposed submission reveals a confounding disconnect to the time line of this case. Plaintiff's counsel readily admitted that the Global Brass and Copper website printout was accessed on September 25, 2010, in preparation for the motion hearing. Global Brass and Copper's status mere days before a motion for summary judgment hearing has no bearing on whether or not Plaintiff made any good faith effort to investigate the propriety of naming and keeping Global Brass and Copper in this suit. The Court agrees with the parties that Global Brass and Copper should be dismissed, and agrees with Defendants that Global Brass and Copper could have been released from this litigation long before now had Plaintiff heeded or investigated the submissions on the record and in discovery. As such, Defendant Global Brass and Copper's motion for summary judgment (Doc. 67) is GRANTED in full. The Court awards costs of preparation and filing of that motion to Defendant Global Brass and Copper, to be paid by Plaintiff.

Discrimination Under The ADA

A *prima facie* case of ADA discrimination requires Mr. Feldman to establish: (1) he is "disabled" within the meaning of the ADA's definition; (2) he was meeting his employer's legitimate employment expectations, (3) he was subjected to an adverse employment action, and (4) similarly situated employees without a disability were treated more favorably.[2]  *Kampmier v.*

---

[2] Mr. Feldman acknowledges that he is proceeding under the indirect method of proof when he recites this standard for a prima facie case in his response to Defendants' motion for summary judgment on Count I (Doc. 78 at 9). In that pleading, Mr. Feldman attempts to add a

*Emeritus Corporation,* 472 F.3d 930, 937 (7th Cir. 2007). Therefore, without proof that he has a "disability" as defined by the ADA, Mr. Feldman cannot succeed. *See id. and Skorup v. Modern Door Corporation,* 153 F.3d 512, 514 (7th Cir. 1998). Here, Mr. Feldman does not create a genuine issue of material fact as to whether he has an ADA disability, so his ADA claim fails.

Determining whether a person "has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483 (1999). "As individual can prove that she is disabled under the ADA by establishing that: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) she has a record of such an impairment; or (3) she is regarded as having such an impairment by her employer." *Kampmier,* 472 F.3d at 937, *citing* 42 U.S.C. § 12102. To prove a substantial limitation, Mr. Feldman must show that he is "unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Kampmier,* 472 at 937. In its determination of substantial limitation, the Court considers "the nature and severity of the impairment, its duration, and the long term effects." *Furnish v. SVI Systems, Inc.,* 270 F.3d 445, 451 (7th Cir. 2001). Proving a record of disability also requires Mr. Feldman to show that his "impairment substantially limits one or more major life activities. *Id.* at 938, *citing Rooney v. Koch Air,* 410 F.3d 376, 381 (7th Cir. 2005). To show that his employer regarded him as having an impairment, Mr. Feldman must adduce sufficient evidence that Defendant believed Mr. Feldman had

---

new claim: that Defendants' policies were *per se* violations of the ADA as against any and all employees (Doc. 78 at 8-9). Mr. Feldman waived his right to make this claim when he failed to raise it in his complaint and his amended complaint. *See Warren v. Solo Cup Company,* 516 F.3d 627, 629 n.3 (7th Cir. 2008). The Court also notes that Mr. Feldman's general contention regarding Defendants' employment policies does not strengthen his claim that he is disabled under the ADA.

a "substantially limiting" condition. *Mack v. Great Dane Trailers,* 308 F.3d 776, 782 (7th Cir. 2002).

Mr. Feldman alleges that his diagnoses of sleep apnea and fibromyalgia substantially limit some major life activity.[3] In his response to Defendants' motion for summary judgment, Mr. Feldman identifies the two life activities that he claims to be limited by his conditions: sleep and memory/concentration/ability to interact (Doc. 78 at 11-12). While sleep is a major life activity under the ADA, in order to reach the level of a disability, Mr. Feldman's sleep must be limited in a "prolonged, severe, and long-term" way by his condition.[4] *Scheerer v. Potter,* 443 F.3d 916, 920 (7th Cir. 2006), *see also Squibb v. Memorial Medical Center,* 497 F.3d 775, 784 (7th Cir. 2007) (finding plaintiff's generalized assertion that back pain limited her ability to sleep insufficient, particularly when plaintiff failed to claim that her lack of sleep affected daytime function). Here, Mr. Feldman fails to provide any evidence that his allegedly limited sleep *significantly* affects daytime function– His own doctor opines that Mr. Feldman is capable of working forty hours a week of straight-time. Mr. Feldman does not dispute that he is able to work forty hours per week, drive

---

[3] Importantly here, Mr. Feldman has waived any argument that a *mental* impairment comprises his purported "disability" under the ADA. Mr. Feldman's motion to quash Defendant's subpoena of Mr. Feldman's treating psychiatrist was granted (Doc. 37). In that motion, Mr. Feldman stated that he "has not put his mental state at issue in this case" (Doc. 35). As such, he has pled himself out of any claim of disability based on a mental state–such as memory, concentration, or depression.

[4] The Seventh Circuit recognized sleep as a major life activity prior to the 2008 amendments of the ADA, which became effective on January 1, 2009. *See Scheerer v. Potter,* 443 F.3d 916, 920 (7th Cir. 2006). The amended ADA specifically lists sleep as a major life activity, but the amendments are not retroactive and do not apply to Plaintiffs' case. *See Winsley v. Cook County,* 563 F.3d 598, 600 (7th Cir. 2009).

a car, engage in recreational activities, go to the movies, go to dinner, or attend church–in spite of his alleged sleep limitation (*see* Doc. 68 at 7). Additionally, Mr. Feldman's sleep limitations have been treated and effectively minimized. Though the results of a sleep study found Mr. Feldman's sleep efficiency to be "very poor" at 48%, that efficiency normalizes significantly–to 81%–when Mr. Feldman uses his CPAP machine. In order to show an ADA disability by proof of a record of impairment, Mr. Feldman would also need to show a substantial limitation on a life activity, and he has failed to do so. Likewise, Mr. Feldman fails to adduce evidence to show that Defendants believed him to be substantially limited by his fibromyalgia or sleep apnea. Though Mr. Feldman cites Defendant e-mails which allegedly recognize the need for work accommodations, Mr. Feldman has not attempted to rule out the rather obvious inference that Defendants' concern related to Mr. Feldman's worker's compensation back injury. At this "put up or shut up" moment, Mr. Feldman fails to offer proof of a prolonged, severe, or long-term limitation on his sleep (or his ability to work).[5] The Court will only address Mr. Feldman's alternate ground for a severely limited major life activity–memory, concentration and ability to interact with others–to reiterate the fruitlessness of that offer. Mr. Feldman foreclosed this avenue of proof when he successfully moved for preclusion of all specific mental evidence (Doc. 35). Without sufficient evidence that he is "disabled" under the ADA, Mr. Feldman cannot succeed on his claim in Count I.

Discrimination Under the ADEA

The ADEA "makes it unlawful for an employer to discriminate against an employee in the terms and conditions of her employment on the basis of age." *Peirick v. Indiana University-Purdue*

---

[5] The Court notes that "[i]t is nearly axiomatic in this Circuit that it is not enough for the plaintiff to show that her impairment prevented her from performing one narrow job for one employer" to meet the ADA disability requirement. *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 507 (7th Cir. 1998).

*University Indianapolis Athletics Dept.,* 510 F.3d 681 (7th Cir. 2007), *citing* 29 U.S.C. § 623(a)(1). To show age discrimination under the ADEA, a plaintiff may proceed under either the direct or indirect method. *Brown v. Illinois Dep't Natural Res.,* 499 F.3d 675, 681 (7th Cir. 2007). In the September 27, 2010 hearing on motions for summary judgment, Mr. Feldman's counsel represented to the Court that he would proceed under the direct method of proof. However, as Mr. Feldman's response to Defendants' motion for summary judgement recites arguments under both the direct and indirect methods, the Court will address the insufficiency of evidence under either method to maintain a triable issue of material fact in the ADEA discrimination claim.

"A plaintiff proceeding under the direct method survives summary judgment by creating triable issues as to whether discrimination motivated the adverse employment action of which he complains." *Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1114 (7th Cir. 2009). The direct method of proof is not limited to direct evidence. Rather, a plaintiff may introduce circumstantial evidence which suggests discrimination through a longer chain of inferences." *Luks v. Baxter Healthcare Corp.,* 467 F.3d 1049, 1053 (7th Cir. 2006). Such circumstantial evidence includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Hemsworth v. Quotesmith.Com., Inc.,* 476 F.3d 487, 491 (7th Cir. 2007). The focus of the direct method of proof is "whether the evidence *points directly* to a discriminatory reason for the employer's actions." *Atanus v. Perry,* 520 F.3d 662, 671 (7th Cir. 2008) (emphasis added).

Mr. Feldman's direct proof consists of the contentions that: he had the right to bump younger

employees in the Bag House position after he was laid off; vacant Bag House positions were not offered to him; and the curtailment which precipitated his layoff was an impermissible "mini-RIF" (reduction in force) (Doc. 85). The record, however, does not bear out these allegations or their pertinence to any supposed discriminatory animus. Mr. Feldman continues to argue that he was laid off without explanation, but the record shows that Mr. Feldman's foreman has explained that use of the coil miller (which requires a tractor operator) was being moved from the first shift to use on both the first and second shift–necessitating replacement of one straight first shift tractor operator position with positions that covered both the first and second shifts on a rotating basis (Doc. 90 at n.5). Further, Mr. Feldman *did* continue to work after the curtailment–that is, until he brought in a note stating he could only work straight first shifts. The curtailment shifted positions, and increased the need for employees who were able to work rotating shifts and overtime. Mr. Feldman was unable to work rotating shifts or overtime. Therefore, Mr. Feldman was *not qualified* for the positions he allegedly bid for in an attempt to bump other employees. Mr. Feldman argues that these positions do not technically require overtime or rotating shift work, so he was qualified. Even if those requirements are not contained verbatim in the official job description, it is not disputed that the employees who held those jobs could and did work overtime and rotating shifts. "The employer, not a court, determines what functions are essential, and we will not second-guess that decision." *Lloyd v. Swifty Transportation, Inc.,* 552 F.3d 594, 601 (7th Cir. 2009). No evidence adduced by Mr. Feldman suggests that the curtailment was an underhanded 'mini-RIF' directed at Mr. Feldman due to his age.

      To make out a *prima facie* case for ADEA age discrimination under the indirect method, Mr. Feldman would need to prove that "(1) he is a member of a protected class (which he is, being 40 or older); (2) his performance met the company's legitimate expectations; (3) despite his

performance he was subject to an adverse employment action…and (4) the company treated similarly situated employees under 40 more favorably." *Martino v. MCI Communications Services, Inc.,* 574 F.3d 447, 453 (7th Cir. 2009). The Court is not wholly sold on the proposition that this lay-off in response to Mr. Feldman's own letter of medical need is an adverse employment action,[6] however, it is the paucity of proof that any similarly situated employee was treated more favorably that dooms Mr. Feldman's indirect case. By his own admission, Mr. Feldman needed a job that did not call for any overtime or anything but a straight shift. To succeed here, Mr. Feldman needed to show that employees younger than 40 *who had similar job restrictions* retained or were placed in other favorable jobs after the curtailment. *See Atanus,* 520 F.3d at 673 ("[A] plaintiff must show that members of the comparative group are directly comparable to [him] in all material respects"). Mr. Feldman has not done so, and his ADEA discrimination claim fails.

<u>Retaliation for ADA and ADEA Protected Activity</u>

Mr. Feldman claims that, in retaliation for his age and disability complaints, Defendants: doled out a harsher-than-necessary warning and suspension when Mr. Feldman's tractor hit a door; assigned him to the coil miller–a physically difficult and disfavored position; harassed him with nighttime phone calls asking him to work overtime; and intimidated him by "watching" him (Doc. 86). Mr. Feldman proceeds on this claim under the direct method of proof (Doc. 86 at 5). "Under the direct method of proof, to establish a prima facie case of retaliation, the plaintiff…must show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal link between the two." *Chapin v. Fort-Rohr Motors, Inc.,* 621 F.3d 673, 677 (7th Cir. 2010). Taking all Mr. Feldman's evidence as true, he still fails to present a

---

[6] *See Hottenroth v. Village of Slinger,* 388 F.3d 1015, 1031 (7th Cir. 2004) (finding that plaintiff's termination was not an "averse employment action," but was instead based on good cause.)

genuine issue of causation, and the retaliation claim is therefore properly dismissed.

Beginning with Mr. Feldman's claim of unwarranted discipline, the Court finds absolutely no connection between his discrimination complaints and his warning and suspension. By his own account, Mr. Feldman complained of his alleged disability discrimination to his supervisors in September of 2006, and he filed his EEOC discrimination allegations in August of 2007 (Doc. 86 at 1). The incident prompting Defendants to issue Mr. Feldman a "final warning" and suspend him for ten days occurred in May of 2008. An intermittent period of eight months is simply "too far removed to support an inference of retaliatory motive." *Swearnigen-El v. Cook County Sheriff's Dept.,* 602 F.3d 852, 862 (7th Cir. 2010), *see also Wallscetti v. Fox,* 258 F.3d 662, 669 (7th Cir. 2001) (finding that a four month lag time between plaintiff's protected complaint and the adverse employment action was "too long to support a reasonable inference of causation").

Regarding Mr. Feldman's claim that his assignment to the coil miller position was retaliatory, he seems to conflate proof that this assignment was retaliation for his discrimination claims with proof that the assignment may have been in retaliation for his worker's compensation claim. Mr. Feldman appeals to the temporal proximity between his back surgery and his assignments to the coil miller position (Doc. 86 at 2). However, because Mr. Feldman's disability complaints occurred during the same time period that he says he was assigned to the coil miller position, the Court will consider it within the context of Count III. While the coil miller position is a physically stressful position, that must surely be the case of many positions at a metal manufacturing plant. By all accounts, the coil miller position existed before Mr. Feldman's intermittent assignment to it, continued to be worked while he was absent from a tractor position, and continues to be worked. In *Nagle v. Village of Calumet Park,* the Seventh Circuit found that an unfavorable work assignment was not punitive–and therefore not actionable under a retaliation

claim–when the 'disfavored' position continued to exist after the plaintiff was reassigned, another employee was assigned to that position after the plaintiff left, and employees who had not made federally-protected complaints of discrimination also worked in that position. 554 F.3d 1106, 1120 (7th Cir. 2009). Such is the case here. Also telling is the fact that Mr. Feldman bid on tractor positions while he was laid off. Based on his own assignment experience, Mr. Feldman could not fail to realize that the tractor positions on which he was bidding would reasonably entail assignments to 'disfavored' positions, like the coil miller–yet Mr. Feldman continued to bid for those positions.

With respect to the overtime phone calls, it is a stretch to classify nighttime calls offering overtime work to Mr. Feldman as "materially adverse" employment action. The requisite materially adverse employment action must be so adverse as to "dissuade a reasonable person from engaging in protected activity." *Henry v. Milwaukee County,* 539 F.3d 573, 586 (7th Cir. 2008). A phone call–though it be in the middle of the night, and though it occur more than one night–does not rise to the requisite standard. Though inconveniently timed, as offers of last-minute extra work often are, these calls were placed to Mr. Feldman to offer him more opportunities to work. This is not harassment that any rationale juror could find was designed to punish Mr. Feldman for his discrimination complaints. Additionally, though Mr. Feldman argues that the overtime calls occurred after his return from medical leave and complaint of disability discrimination, "the mere fact that one event preceded another does not prove causation." *Hall v. Forest River, Inc.,* 536 F.3d 615, 622 (7th Cir. 2008). Mr. Feldman has not shown a causal link between his discrimination complaints and the overtime phone calls.

Finally, Plaintiff's claim of retaliatory "intimidation"is a non-starter. Plaintiff offers no evidence that the "staring" was causally related to his discrimination complaints and his contention that his supervisors were "watching" him is a feckless attempt to demonstrate a materially adverse

employment action.

### Retaliatory Discharge Under Illinois Worker's Compensation Law

In Count IV of his amended complaint, Mr. Feldman pleads for relief due to "retaliatory discharge" (Doc. 44). The allegations under this count reiterate that Mr. Feldman suffered retaliatory *discharge* in contravention of the Illinois Worker's Compensation Act. Now, in response to Defendant's motion for summary judgment, Mr. Feldman attempts to expand this claim to include retaliatory refusal to rehire or recall (Doc. 87 at 2). The difference between these claims is that retaliatory discharge under Illinois Worker's Compensation Act requires actual termination, retaliatory failure to rehire or recall does not. *See Webb v. County of Cook,* 656 N.E.2d 85, 87 (Ill.App.Ct. 1995). Mr. Feldman was laid off, not terminated, so a claim for retaliatory discharge would necessarily fail. Because Mr. Feldman's complaint alleges retaliatory discharge, he proceeds on extremely shaky ground. However, whether or not it was by design, Mr. Feldman's complaint for retaliatory discharge does contain an allegation claiming that Defendants "discharged Mr. Feldman and refused to return him to work" (Doc. 44 at 12).

On this slim semblance of an appropriately stated claim, the Court proceeds, but finds that Mr. Feldman has not sufficiently proven a case for retaliatory failure to rehire or recall under Illinois law. The Illinois Supreme Court has yet to define a sufficient case for retaliatory failure to rehire or recall, but the Fifth District Appellate Court of Illinois provides an instructive opinion in *Cochrum v. Old Ben Coal Company.* 678 N.E.2d 1093, 1098 (Ill.App.Ct. 1997). In *Cochrum,* the court found that "in order to support plaintiff's contention that the defendant refused to recall him to a suitable position, the plaintiff must show that there was a job *available* that plaintiff could have

performed given his medical restrictions." *Id.* (emphasis added).  As detailed above, Mr. Feldman could not provide sufficient proof that he was able to perform available positions.  Any available positions required overtime and/or swing shift work.  Due to his medical restriction, Mr. Feldman was not qualified for these positions.  "Illinois law allows employers to act on the basis of their employee's disabilities."  *Hartlein v. Illinois Power Co.,* 601 N.E.2d 720, 728 (Ill.App.Ct. 1992).  Illinois employers are not obligated to reassign employees with medical restrictions.  *Id.*  "Under Illinois law, a plaintiff's inability to perform his job is a valid nonpretextual reason to terminate him; and likewise, it is a valid nonpretextual reason not to recall an employee."  *Cochrum,* 678 N.E.2d at 1099.  Here, Mr. Feldman's thinly pleaded retaliatory failure to recall or rehire claim fails because Defendants had a valid reason to hold his reinstatement until there was a position available that fit Mr. Feldman's medical needs.

## CONCLUSION

Mr. Feldman fails to maintain a genuine issue of material fact on any of his four pleaded Counts.  Defendants' motions for summary judgments are therefore GRANTED, and Mr. Feldman's complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: 11/29/2010

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge